CASTOR COLÓN, Plaintiff and Appellant, *v.* PLAZUELA SUGAR COMPANY, Defendant and Appellee.

No. 6154. Argued May 19, 1933.—Decided January 16, 1935.

828

*L. Mercader* for appellant.   *G. Zeno Sama* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

About the year 1931, Castor Colón brought suit against Plazuela Sugar Company, alleging that a certain property of the plaintiff is crossed by a railroad of the defendant, and praying that his property be adjudged free from a servitude of right of way, and that the defendant be ordered to remove the rails which it has on the said property.   According to the pleadings and the evidence, Pascasia Serrano, owner in 1907 of a property of nine acres (*cuerdas*), situate in the ward of Islote, in the municipal district of Arecibo, granted to Plazuela Sugar Company a verbal permit for the construction and operation of a railroad across said property.   On the following year, said permit was incorporated by the parties into a private instrument, executed before witnesses.   In that instrument, the owner, in consideration of the price of $25.00, ratified the verbal permit theretofore granted.   Some years afterward, both parties executed before a notary a public instrument, which recites that the Plazuela Sugar

Company is the owner of a private railroad which crosses with its track a parcel of the property belonging to Pascasia Serrano, which is described, thereby increasing considerably the value of said property, in consideration of which and of the payment of one dollar, the receipt of which she acknowledges, the owner of the immovable grants in perpetuity to the Plazuela Sugar Company a servitude of passage for a permanent railroad over said parcel, which is also described. It further recites that Pascasia Serrano grants, assigns, and transfers to Plazuela Sugar Company the said parcel of land, with the right on the part of said corporation to the use thereof in perpetuity for the purpose of establishing, levying, and embedding a railroad track, and maintaining and operating the same by means of any rolling-stock that may be necessary and of any animal or mechanical power whatsoever. Five years later, in 1918, Pascasio Serrano sold to Arturo González Prado a one-acre parcel of the said property for the price of $250.00, the receipt of which she acknowledged, and it was stated in the deed that said parcel was crossed from east to west by a railroad track of the Plazuela Sugar Company, which fact was also entered by the registrar in his books when recording said parcel of one acre in the name of González Prado. Subsequently, Plazuela Sugar Company presented for record in the registry the deed which Pascasia Serrano had executed in its favor in 1913; but the registrar denied the record of the document and only entered a cautionary notice, because the dominant estate in favor of which the servitude was constituted had not been described, and because, subsequent to the execution of the document, a parcel recorded in the name of a different person had been segregated from the main property, and it could not be determined whether the strip of land comprising the servitude was within the remaining portion of the property or within the segregated parcel. No appeal from such refusal was taken by the Plazuela Sugar Company, nor does it appear whether the said document was

subsequently recorded in the registry of property. In 1927, the property of González Prado was sold by the Collector of Internal Revenue for the payment of delinquent taxes, and it was purchased by Esteban Mena Díaz, who also suffered the property to be sold for taxes by the Collector of Internal Revenue to Castor Colón, who in May, 1931, recorded his title in the registry of property.

The lower court rendered a judgment in favor of the defendant. From that judgment the plaintiff took an appeal, and he has assigned several errors which we shall examine in the same order in which they were presented.

█ It is urged, in the first place, that the court *a quo* erred in not rendering judgment against the defendant in accordance with the verified pleadings filed. At the commencement of the trial, the plaintiff had moved for a judgment on the pleadings, which are verified. That motion was denied, and thereupon the evidence was introduced. The error assigned must be dismissed in accordance with the doctrine laid down in *Ana María Sugar Company* v. *Castro et al.*, 28 P.R.R. 225, and *Rivera* v. *Central Pasto Viejo*, 43 P.R.R. 683.

█ Appellant says that the lower court erred in admitting in evidence four documents which are described in the second, third, fourth, and fifth assignments of error. This evidence is directly connected with the servitude alleged by the defendant and is clearly admissible, as will be shown in the course of this opinion.

█ The sixth and seventh assignments of error are based on the holding of the court *a quo* that the registrar of property should not have refused to record the deed executed in 1913 to Plazuela Sugar Company. In the opinion of the lower court, said deed ought to have been recorded, inasmuch as an assignment, a transfer of a parcel of land, and not the creation of a real servitude was involved.

The correctness or incorrectness of the action of the registrar in denying the record sought is not a question for discussion in the case at bar, as it cannot affect in any way the final determination to be made herein. The findings made by the lower court on this point are, therefore, devoid of importance, since they are irrelevant and, as we have stated, they can have no influence in the affirmance or reversal of the judgment appealed from.

██ It is urged that the lower court erred in holding that the cautionary notice entered by the registrar when said deed was presented for record, affected, notwithstanding its expiration, the rights of the plaintiff, and that the latter was and is a *bona fide* third person. This Court has declared that cautionary notices are of a temporary character and expire at the end of the 120 days fixed by law for curing the defects which preclude the admission of the title to record, and that when they have expired without the correction of said defects, they produce no effect whatever against third persons, it being the duty of the registrar to cancel said cautionary notices *ex officio*. *Ramis et al.* v. *Registrar of Property*, 18 P.R.R. 74; *Antonsanti* v. *Registrar of Property*, 9 P.R.R. 171.

█ In the instant case, the plaintiff had knowledge, not merely from the cautionary notice but from the title of González Prado recorded in the registry, that the immovable which he purchased was crossed from east to west by a railroad track of Plazuela Sugar Company. As regards the cautionary notice, in view of its temporary character, it does not constitute constructive notice of the contents thereof after the expiration of the period fixed by law. The American law clearly distinguishes between the effect of constructive notice and that of actual notice. Where actual notice exists, it is not possible to assert the character as a third person. Let us suppose that a person gains personal knowledge of the existence of certain facts from some source of informa-

tion, could the living reality of those facts be erased from his imagination so as to permit him to successfully claim the status of a third person? Are the rules prescribed by the Mortgage Law determining whether or not a contracting party has the status of a third person, so inflexible as to carry one to the extreme of disregarding reality in order to create the fiction of a want of knowledge, where the facts, perceived through the senses, palpably manifest themselves with the necessary clearness? Undoubtedly not. As we said in *Arroyo* v. *Zavala*, 40 P.R.R. 257, the law does not live in an atmosphere of fiction but in a world of realities. The philosophical basis or ethical element is not sufficient by itself to give life to the law; as the human body needs air in order to breath, so does the law require historical and circumstantial elements.

The plaintiff can allege that he has not received, through the cautionary notice, constructive notice of the existence or probable existence of a valid servitude title; but he is precluded from denying that that same registry with which he seeks to shield himself gave him notice, through the title recorded in the name of González Prado, that the parcel purchased by him was crossed by a railroad track of Plazuela Sugar Company.

The defendant argues that, from the registry as well as from the reality of the track laid on said parcel, whose presence there must necessarily strike the senses, the incumbrance of the servitude in favor of Plazuela Sugar Company had to be known. The textwriter Morell, in commenting on Section 27 of the Mortgage Law, cites twenty judgments of the Supreme Court of Spain, the doctrine of which, he thinks, can be summarized thus:

"The character as a third person under the Mortgage Law (*tercero hipotecario*) cannot be as asserted by one who has has full knowledge of the conditions under which the acquisition was made, even though they do not appear from the registry, whether such knowledge has been derived from acts performed by the alleged third person, or

from facts which must necessarily strike the senses, as for instance, in the case of certain apparent servitudes; although there should not be adm'tted more or less logical or reasonable presumptions which are really in conflict with the essential basis and scope of the provisions of the Mortgage Law, nor would it be proper either to compel the interested parties to make a juridical examination of the conditions of the property or rights recorded." 2 Morell, 533–534.

In criticizing the views held by the high Spanish tribunal, this eminent commentator says:

"The Supreme Court establishes, therefore, a new distinction between third persons, arising from the knowledge, actual or presumptive, of the acts or of the recordable rights, in order to conclude finally that unrecorded titles may prejudice other titles even though the latter are recorded, if the person who recorded them had, or ough to have, knowledge thereof. Hence, one who acquires a right may notify the same, by a notarial instrument or other means, to such persons as may or should be prejudiced by such right, and thus he is not required to make any record, and divests of his character as a third person one who has lawfully such status.

"   .    .    .    .    .    .    .    .    .    .

"We praise the ethical tendency which the above doctrine reveals, the respect which it accords to good faith; but we are convinced that that is not what Section 27 of the Law says nor what the legislator intended to enact. It has not occurred to the Supreme Court that even in our law there is not always a leaning towards the principle of publicity alone, and that the doctrine and tendency revealed by Sections 17, 23, 34, 36, 24 and 41 of the Law, and Sections 606, and 1473 of the Civil Code, is quite different." 2 Morell, 534.

At page 667, the same commentator says:

"The doctrine laid down by the Supreme Court has some basis, and it is logical in the sense in which it regards the words 'third person', not in accordance with the letter of Section 27, but in conformity with the legal reason which is atributed thereto. It is true that an apparent s'gn of servitude is clear and visible, and that the use of the easement appears to exist. But this does not mean that an apparent servitude is to be regarded always as having been legally constituted, since its apparency is not enough, as it may be founded upon mere tolerance and may therefore be ignored or avoided when it is not supported by any legal basis."

The view maintained by the Supreme Court of Spain seems to us to be just and reasonable, as it conforms to the realities of life and construes with a certain flexibility the provisions of the Mortgage Law, without violating the principles upon which the same is founded. We agree with Mr. Morell that an apparent sign of servitude does not always mean that the servitude has been legally constituted, since it may be based upon mere tolerance. But we think that such an apparent sign is sufficient to put upon inquiry anyone who attempts to deal with the alleged servient tenement, in order that he should act with caution and try to verify the true situation. The inquiry would be a very simple and easy one, because even in a case where the owner of the servient tenement should conceal the information, the latter would not be hidden by the owner of the dominant estate, who, on the other hand, would be precluded from impugning his own acts, should he refuse to reveal the truth.

This Supreme Court, in the case of *Arroyo* v. *Zavala, supra,* expressed itself thus:

"First, we should consider the meaning of third person (*tercero*) and, of course, establish the difference between the civil third person (*tercero civil*) under the general law and the third person (*tercero hipotecario*) strictly under the Mortgage Law, whose field of operation is confined to the registry of property.

"The Supreme Court of Spain in a great number of decisions has held that a person who has knowledge of the existence of a lien or the legal status of an immovable is not really a third person (*tercero*), with reference to such l'en or status. The law does not live in an atmosphere of fiction but in a world of realities. The philosophical basis or ethical element is not sufficient by itself to give life to the law. As the human body needs air in order to breathe, so does the law require historical and circumstancial elements. Th's is why the Supreme Court of Spain, in the decis'ons above alluded to, has kept in mind realities of life, and if a person has been perceiving with his physical senses the evident signs of a servitude, he cannot, through a legal fiction, become a third person as regards such lien. Apart from that point of view, those decisions show the intimate connection which exists between the Civil Law and its branch the

Mortgage Law, notwithstanding the efforts of those who endeavor to make the latter independent of the former. As regards the Civil Law, the Mortgage Law is a minor that will never become of age.''

See also *Pagán* v. *Heirs of Rivera,* 38 P.R.R. 583; *Roman Catholic Church* v. *Combate Tobacco Corp.,* 42 P.R.R. 377; and *Alvarez* v. *Municipality,* 43 P.R.R. 498.

.There is no doubt that the rails laid in the form of a track upon the property ostensibly show the passage over the same of locomotives. Do these rails constitute an apparent sign of the probable existence of a servitude? We think so. Irrespective of prescription and the elements which unite in giving it life, on which point we do not wish to advance any ruling, those rails could only be there either by reason of the consent or mere tolerance on the part of the owner of the servient tenement, or by virtue of a title. Now, if these are the facts, if this is the palpable reality for anyone who were to entertain the purpose of acquiring the immovable, does it not seem natural and reasonable that he should try to verify the truth before closing the deal?

The American decisions hold that a purchaser of real estate which is subject to such an easement as is apparent upon ordinary inspection of the premises is charged with notice thereof. And it considers as sound the rule to the effect that visible signs indicating the servitude, or actual knowledge of some fact which indicates its existence, generally put the purchaser upon inquiry; and where no inquiry is carried out by him it is to be concluded that, had an inquiry been made, it would have developed the truth. Notes, 41 A.L.R. 1442; 74 A.L.R. 1250.

In *McCann et al.* v. *Day,* 57 Ill. 101, it was held that where a person acquired by a documentary title a right of way, and both sides of the way were fenced and in constant use for the purposes of the way, these facts constituted notice to the subsequent purchasers, although the document had not been recorded.

In *Kamer* v. *Bryant*, 46 S. W. 40, decided by the Court of Appeals of Kentucky, it was held that the purchaser of a lot over which a switch was operated by another for carrying stone from a quarry to a railroad, is charged with notice of the easement, and can not dispute its existence. In that case it was proved that at the time said lot was purchased, the switch was there showing its use for the benefit of the owners of the quarry, and that the purchaser objected to the easement three years afterwards, when the negotiations for the purchase of the quarry failed. As we have stated, the court held that said purchaser had notice of the easement at the time he bought, and could not thereafter dispute its existence.

In the case of *Toa Sugar Company* v. *Galán et al.*, 28 P.R.R. 791, this Court expressed itself as follows:

"We are inclined to agree with the appellant that the 'apparent sign' takes away the condition of third persons of those acquiring the servient tenement, and that the existence of a road, if clearly defined and by reason of the physical facts obvious to any one inspecting the premises, is sufficient notice to such purchaser."

See also *Ward* v. *Metropolitan El. Ry. Co.*, 152 N. Y. 39, 46 N. E. 319; and *Harman* v. *Southern Ry.*, 72 S. C. 228, 51 S. E. 689.

The ninth assignment of error is based on the finding of the lower court that the deed of sale of the parcel of land to González Prado was simulated, without such question being applicable and without there being any evidence to support the same or to hear the interested parties, and without any connection between the title of the plaintiff and such contract, inasmuch as he had acquired the property directly from the People of Puerto Rico in an execution proceeding for the collection of taxes due. The court did not base its decision upon the question of whether the title executed in favor of González Prado was or was not simulated. Going into the motives of Mr. González Prado, the lower

court, after declaring that he cannot set up the status of a third person, says that, subsequent to his simulating the purchase of one acre of land for the exhorbitant sum of $250, he suffered it to be sold in execution for the amount of $3.82 without exercising any act whatever tending to impugn the servitude; the primary purpose which induced him to make the purchase under the lure of a possible and large indemnity. The remarks of the court which, by the way, do not contain any formal declaration of nullity, cannot affect the final result of this suit, because whether the title of González Prado be valid or simulated, the present owner of the parcel of land cannot be considered as a third person.

■ It is said in the tenth and eleventh assignments of error, that the lower court erred in holding that Plazuela Sugar Company should have been notified of the sale made by the People of Puerto Rico, and in declaring that the words "free from all mortgages, liens or encumbrances", used in Section 347 of the Political Code, do not include servitudes. With respect to this last point, the lower court expressed itself thus:

". . . we think that the words *liens* or *encumbrances*, as used in this law, rather refer to debts of all kinds with which the property may be burdened, *e. g.*, mortgages, attachments and others of like character, than to tangible real charges, such as servitudes. The former are easy to extinguish, since they do not affect the estate directly; by the mere payment thereof they are cancelled. Such is not the case as regards the latter, because servitudes are inseparable from the tenement to which they activily or pasively belong. Section 470 of the Civil Code (1930 Ed.). It is also provided by Section 471 that servitudes are indivisible, and when the servient tenement is divided among two or more persons, the servitude is not modified and each of them shall be subject to the servitude in part corresponding to him."

The decisions of the American courts are not in accord as to what becomes of a servitude when real property is sold for the payment of taxes. Some courts hold that the servi-

tude becomes extinguished while others, which constitute the majority, maintain a contrary view. The Court of Appeals of New York, in the case of *Tax Lien Co.* v. *Schultze*, 213 N. Y. 9, said:

"When an easement is carved out of one property for the benefit of another the market value of the servient estate is thereby lessened, and that of the dominant increased practically by just the value of the easement; the respective tenements should therefore be assesssed accord'ngly. (Citing cases.)

"The assessment of the lot described in the judgment did not include the easements appurtenant to the adjoining real property. The assessment of the servient estate was subject to the easements included in the assessments of the dominant estate. As a necessary consequence it has been held that on the foreclosure of a tax lien and a sale of the prem'ses pursuant to Sections 1035–1039 of the Greater New York charter, private easements of light, air and access of adjoining owners over the land sold are not extinguished. If property rights which are excluded from an assessment are sold or extinguished by a tax sale, there would be a taking of property w'thout due process of law. (Jackson v. Smith, 153 App. Div. 724; affd. on opinion below by decision handed down herewith, 213 N. Y. 630.)"

This seems to be the more correct view and the one prevailing among the courts which hold that the servitude subsists when the property is sold for the payment of taxes. If a property is subject to a servitude, it is natural that its value should be diminished by reason of the change existing upon it; likewise the value of the dominant estate, which receives the benefit of the servitude, should increase.

In the case of *Blenis* v. *Utica Knitting Co.*, 149 App. Div. 936, affirmed by the Court of Appeals of New York, the court expressed itself as follows:

"The statutes relating to tax sales in the county of Oneida, which provide that the purchaser at such sales obtains an absolute title free from all incumbrances, cannot, in my opinion, go further than to divest the purchaser with the title that he owner of the property had, free from liens by the way of incumbrances placed thereon. In other words, it cannot divest a party, situated as the plaintiff is here, from a property right, such as a servitude or easement lawfully acquired

prior to the levying of the tax under which the sale was made; and this, especially, when he was not made a party to the proceeding.'█

We think with the lower court that the title acquired by the plaintiff by virtue of the sale of the property made by the People of Puerto Rico, does not release said property from the servitude which exists thereon.

The last error attributed to the lower court is that said court failed to sustain the complaint and to impose the costs on the defendant, and that it committed manifest error in weighing the evidence. The complaint was dismiss without any special imposition of costs. As regards the evidence produced, which for the most part is documentary, we think that it justifies an affirmance of the judgment appealed from.

In short, we think that Plazuela Sugar Company and Pascasia Serrano entered into a contract, whereby a servitude was created in favor of the defendant upon the parcel of land of which the plaintiff is now owner. This contract is binding upon the then owner of the servient estate and upon all subsequent purchasers of the land subject to the servitude with notice shown by the evidence adduced. The fact that the dominant estate was not described when the contract made between Pascaria Serrano and the defendant was incorporated into a public instrument, does not affect the validity of the title. The evidence has clearly shown that the servitude was constituted on the parcel of land sold by Pascasia Serrano to González Prado, and of which the plaintiff is now the owner.

The judgment appealed from must be affirmed.

Mr. Justice Wolf and Mr. Justice Aldrey dissented.

---

### DISSENTING OPINION OF MR. JUSTICE ALDREY

Castor Colón filed suit, in 1931, in the District Court of Arecibo against Plazuela Sugar Company, a private corporation, praying the court to declare that a certain property

of the plaintiff which is crossed by a railroad of the defendant is free from a servitude of passage on that railroad and, accordingly, to order the defendant to remove the rails which it has on the said property. After a trial the court rendered judgment for the defendant, and thereupon the present appeal was taken.

At the commencement of the trial the plaintiff moved for a judgment on the pleadings, which are verified, and that motion having been denied, the appellant now urges as a first ground of his appeal that such ruling was erroneous. There was no error, because that motion of the plaintiff came too late. In the case of *Ana María Sugar Co.* v. *Castro et al.*, 28 P.R.R. 225, we have held that such a motion should be made before the case is called for trial. Besides, the answer controverts allegations of the complaint, since it denies that the plaintiff is the owner of the acre (*cuerda*) of land as to which he claims that it belongs to him and also that no servitude exists thereon. *Miranda* v. *National Fire Ins. Co.*, 41 P.R.R. 209.

We may now proceed to state the facts in this case as the same appear from the documentary evidence introduced by the parties, the testimony taken lacking essential importance in this connection.

Pascasia Serrano owned in 1907 a property of nine acres (*cuerdas*) situated in the ward Islote, municipality of Arecibo, and as such owner she granted to Plazuela Sugar Company verbal permission for the passage over her land of a railroad, which the latter was constructing for the transportation of sugar cane to its central. On the following year, that permit was incorporated by the owner of the land and by the central into a private instrument executed before witnesses. In that instrument said owner, in consideration of the price of $25, ratified the permit which she had previously granted orally. Several years later, in 1913, the said Pascasia Serrano and the corporation Plazuela Sugar Com-

pany executed a public instrument, before a notary. Mrs. Serrano stated in the deed that she was the owner of a property of nine acres which was described; the corporation that its railroad, constructed in a permanent manner, crosses the property of the said Mrs. Serrano; and both parties that the boundaries of the strip of land occupied by the railroad, measuring 78 meters in length and 8 meters in width, had been established. Pascasia Serrano agreed to assign and transfer the said strip of land to the central for the use of its railroad in consideration of the enhancement in value derived by the property from the railroad, and of the payment of one dollar, the receipt of which she acknowledged; and also said that as long as the railroad existed she would do not act which would interfere with the movement of the trains of the Plazuela Sugar Company. Five years thereafter, or in 1918, Pascasia Serrano sold to Arturo González Prado a one-acre parcel of the said property for the price of $250, the receipt of which she acknowledged, and it was stated in the deed that said parcel was crossed from east to west by a railroad of the Plazuela Sugar Company, which fact was also entered by the registrar in his books when recording the property of one acre in favor of González Prado. After that record was made, Plazuela Sugar Company presented for record in the registry the deed which it had executed in 1913 together with Pascasia Serrano; but said official denied the record and entered a cautionary notice in respect to the instrument for 120 days. No appeal was taken from such refusal by the Plazuela Sugar Company as provided by law, and the deed had not been recorded at the time the action herein was brought. Subsequently, in 1927, the property of González Prado was sold by the Collector of Internal Revenue for the payment of delinquent taxes, and it was purchased by Esteban Mena Díaz. The latter also failed to pay the taxes on the property and thereupon the collector sold it to Castor Colón, who in May, 1931, recorded his tax-title in the registry of property.

From the foregoing it is inferred that, although Pascasia Serrano granted a servitude of passage for a railroad over her property of nine acres in favor of Plazuela Sugar Company, such servitude title had not been presented for record in the registry at the time the sale of one acre had been recorded in favor of González Prado, who therefore purchased free from such lien, according to the registry, and hence the instrument of servitude title executed by Pascasia Serrano and Plazuela Sugar Company can not prejudice him. Even though in the deed of sale of the one-acre parcel from Pascasia Serrano to González Prado, it was stated that such parcel was crossed from east to west by a railroad of Plazuela Sugar Company, that statement does not create a servitude title for, as was said by Mr. Manresa in his commentaries on the Spanish Civil Code (3d. ed., vol. 4, p. 613), which on the subject agrees with our code, "the deed of sale of a property in which it is recited that a passage-way (*corredor*) exists on the property, is not an instrument (*título*) creating or acknowledging an easement of view nor even of light in favor of the tenement sold, nor may such servitude be regarded as acquired by prescription if twenty years have not elapsed after the hostile (*obstativo*) act from which such period must be computed. Judgment of December 12, 1908."

It is true that subsequent to the record made in favor of González Prado and before the appellant and his predecessor of record had purchased the one-acre property at the auction held by the Collector of Internal Revenue, Plazuela Sugar Company had presented for record the deed which it had executed with Pascasia Serrano; but the Registrar of Property refused to record it and entered instead a cautionary notice in respect thereof for 120 days as provided by law in such a case, and the defects which according to the registrar precluded the record of the instrument were not cured during such period. In conclusion, that deed has not been recorded in the registry, at least up to the commencement of this suit.

That the registrar erred in denying the record of the deed, as the trial court thinks, is not a question raised by the pleadings nor which could affect the rights of subsequent purchasers of the property or any part thereof, because the fact is that, whether rightly or wrongly, no record of the instrument was made, and the cautionary notice for 120 days entered by the registrar in consequence of his decision did not produce as against third persons the effects of a record, since, as stated by this court in the case of *Ramis et al.* v. *Registrar of Property*, 18 P.R.R. 74, 75, such notices are of a temporary character and expire at the end of the 120 days fixed by law for correcting the defects which preclude the admission of the title to record, and when they have expired without the correction of said defects they produce no effect whatever against third persons and have no force to destroy the civil rights of other persons, it being the duty of the registrar to cancel said cautionary notice *ex officio*. And in the case of *Antonsanti* v. *The Registrar of Property*, 9 P.R.R. 171, it was declared that the purpose of such notices is to secure the right of the parties interested in the record for the term of 120 days during which, should they present a new title or correct any defect which prevents the inscription, they may record their right, such record taking effect from the date of the entry of the cautionary notice. Therefore, the said cautionary notice, which expired four months after it was entered, did not prejudice subsequent purchasers, either by itself or in conjunction with the circumstance that a railroad track exists on the property, as this would be evidence of a fact but not of the existence of a right to have such track remain there. Upon this point Mr. Morell, in his commentaries on the Mortgage Law (Vol. 2, p. 667), says the following:

"It is true that an external sign of servitude is clear and visible, and that the use of the easement appears to exist. But this does not mean that the apparent servitude must always be regarded to have been lawfully constituted as such, since its appearance is not enough;

it may be founded upon mere tolerance and it may therefore be ignored or avoided when it is not supported by any legal basis."

This in so far as third persons are concerned, for as regards Plazuela Sugar Company and Pascasia Serrano the servitude contract exists.

As the servitude · title has not been recorded in the registry, let us see whether by reason of the existence since 1907 of the railroad track of the appellee on the property of Pascasia Serrano and on the one-acre parcel which she sold to González Prado and now belongs to the appellant, the central has acquired the right of way by prescription of twenty years.

The above question is not new in this court. In the case of *Torres et al.* v. *Plazuela Sugar Co.,* 24 P.R.R. 451, it was observed that if by laying railroad tracks on the land the servitude is converted into an apparent one, it is doubtful whether a written title would be necessary. But in a later case, *González* v. *Plazuela Sugar Co.,* 42 P.R.R. 676, we declared that as a railroad servitude of passage has always, because of its use, the character of a discontinuous servitude, there can be no doubt that for its acquisition a written title is required, since in defining the various classes of servitudes Section 539 of our Civil Code (Sec. 468, 1930 ed.) says that continuous servitude are those the use of which is or may be incessant without the intervention of any act of man; and that discontinuous servitude are those used at more or less long intervals and which depend upon acts of man. It was further stated: "In so far as a servitude is used at more or less long intervals and depends upon acts of man, it does not lie to classify it otherwise than as a discontinuous one, and so also with regard to a servitude for railroad purposes serving the crops of a particular estate." It was also said: "Discontinuous servitudes, whether apparent or not, can only be acquired by virtue of a title (Sec. 546, Civil Code), and a reading of Section 547

of the Civil Code leaves no room for doubt that the title must establish the servitude, as also that a servitude of this kind can not be acquired by prescription—something which is perfectly logical, since the acts of use, not being incessant and have a beginning and an end which are reproduced without perfect continuity, can not establish prescription.'' Mr. Manresa in his commentaries to the Civil Code, (*Comentarios al Código Civil*) volume 4, page 577; Scaevola in volume 10, page 157, and Morell on Mortgage Legislation (*Legislación Hipotecaria*), volume 1, page 341, acknowledge that the servitude of passage is a discontinuous one. As regards the question that it can not be acquired by prescription but by a title, this court had already so held in the case of *Del Moral* v. *Muratti* (correct short title should be *Nadal* v. *Muratti*), 34 P.R.R. 244, where in dealing with the acquisition of a servitude by prescription, we declared (p. 248): ''The year 1890 is of decisive importance because that was the year when the Civil Code went into effect and since that time the servitude in question could be acquired only by virtue of a title, and in this case such a means of acquisition has not even been mentioned.''

The decision in *Roman Catholic Church* v. *Combate Tobacco Corp.*, 42 P.R.R. 363, has no application in the instant case, because there what was involved was a continuous and apparent servitude of light which could be acquired by prescription, since according to Section 544 of the Civil Code and the holding in *García* v. *García*, 25 P.R.R. 119, it may be acquired in two ways, by a title or by prescription of twenty years, whereas the servitude with which we are dealing now is a discontinuous one, which requires for its exercise the acts of man, and for this reason, whether apparent or not, it can only be acquired by virtue of a title in accordance with Section 546 of the Civil Code. Nor is the case of *Alvarez* v. *Municipality*, 43 P.R.R. 498, germane to the one herein, because in the former case there was

involved a servitude of aqueduct which this court held to be apparent and continuous and which could be acquired by prescription, and because it was also held, under the evidence, that the plaintiff had notice of said servitude before he purchased the property, while in the present case there is involved a servitude which by reason of its being a discontinuous one, can only be acquired by virtue of a title, whether such servitude be apparent or not; and because although the property purchased by the plaintiff is crossed by a railroad track that fact may exist without any servitude title, by mere tolerance.

The mere fact of the existence of a railroad track on a property which is purchased does not impose any duty upon the purchaser to make inquiry as to whether the owner of such track holds any servitude title thereto or whether the latter is sufficient to establish such right of servitude. To maintain otherwise is to render unnecessary the recording of that title in the Registry of Property in order to prejudice a third person, because then the placing of the track and the existence of a servitude title even though the same is not recorded in the registry, would suffice.

Inasmuch as no recorded servitude of passage which may affect the purchase made by the appellant exists, and as the kind of servitudes to which we have referred can not be acquired by prescription, it is unnecessary to decide whether such servitude is not binding either, by reason of the appellant having acquired the one-acre property by purchase at a sale made by The People of Puerto Rico for the collection of taxes due thereon.

The judgment appealed from should be reversed and another rendered in favor of the plaintiff, without any special imposition of costs.

### DISSENTING OPINION OF MR. JUSTICE WOLF

In the main I agree with the dissenting opinion of Mr. Justice Aldrey. Some doubt I have of the citation of the

cases of *Roman Catholic Church* v. *Combate Tobacco Corp.*, 42 P.R.R. 363, and *Alvarez* v. *Municipality,* 43 P.R.R. 498, from which I dissented. In other words, I doubt if the mere knowledge of the existence of rails would put a purchaser upon inquiry. Also, I question whether the knowledge of an actual writing attempting to create a servitude would without record avail an alleged dominant tenement against a purchaser or the like.